**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**BROOKS LAW FIRM,**
Plaintiff,

Civil Action No. __________

v.

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**
Defendant.

---

# EXHIBIT A

FOIA Request - August 25, 2026

Providence Field Office Operations

BROOKS LAW

10 High Street, Suite 3
Medford, MA 02155
Tel: (617) 245-8090
Fax: (617) 245-8088
www.brookslawfirm.com

Arinda R. Brooks, *Founder*
Albert Ngo, *Partner & COO*

Vitoria Guimaraes, *Partner*
Connor Gilbert, *Partner*

August 25, 2026

VIA ONLINE SUBMISSION — USCIS FOIA Immigration Records System (FIRST)

Freedom of Information Act Officer
U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office

**Re: Freedom of Information Act Request (Non-A-File Records): Providence Field Office (Johnston, Rhode Island) N-400 Interview Capacity, Staffing, and Local Implementation**

Dear FOIA Officer:

Brooks Law Firm, through undersigned counsel Carl Hurvich ("Requester"), submits this request under the Freedom of Information Act, 5 U.S.C. § 552, and DHS's implementing regulations, 6 C.F.R. Part 5. The request seeks records of the Providence Field Office, the Boston District Office (District 1), and the Northeast Region concerning N-400 interview inventory, scheduling capacity, staffing, workload, and implementation of headquarters or local instructions.

This request seeks non-A-File agency records. It does not seek records about a named applicant and does not require a Privacy Act consent. Requester asks USCIS to assign this filing its own tracking number.

**Separate request.** This filing concerns Providence Field Office (Johnston, Rhode Island) operational records and local implementation. Companion filings concern different repositories, custodians, and record categories. They are separated to permit efficient, discrete processing and review—not to avoid fees. If USCIS proposes aggregation under 6 C.F.R. §§ 5.5(d) or 5.11(h), please identify the basis and continue processing readily segregable categories.

## Office, time period, and scope

The covered office is the USCIS Providence Field Office, located at 1543 Atwood Avenue, Johnston, Rhode Island 02919, together with the Boston District Office (District 1), Northeast Region, and Field Operations Directorate headquarters, including any successor, renamed, or functionally equivalent components, to the extent they supervise, issue instructions concerning, or maintain records concerning its N-400 work. References to the office include “Providence Field Office,” “Providence,” “Providence, RI,” “Providence, Rhode Island,” “Johnston,” “Johnston, RI,” “Johnston, Rhode Island,” and any corresponding office or location codes. Unless a specification says otherwise, the period is October 1, 2023 through the date USCIS begins its search. The request includes records concerning N-400 work assigned to, transferred into, or transferred out of the Providence Field Office. It does not seek applicant-identifying material.

## Definitions and record cutoff

- “N-400” means Form N-400, Application for Naturalization, including military and nonmilitary filings; any distinction maintained by USCIS should be preserved.
- “Initial interview” or “initial examination” means the first examination under INA § 335 and 8 C.F.R. § 335.2. It excludes biometrics appointments, InfoPass appointments, oath ceremonies, and later reexaminations unless a requested field or record does not distinguish them.
- “Scheduled” includes both the date USCIS generated or issued an interview notice and the appointment date. A responsive record should preserve distinctions among scheduled, conducted, canceled, and rescheduled events.
- “Adjudicated,” “processed,” “completed,” and “disposition” must be produced as separately defined by USCIS and, where maintained, broken out into approvals, denials, withdrawals, administrative closures, terminations, and other disposition types.

- “Policy” or “operative record” includes any standard, instruction, business rule, queue rule, practice, or guidance actually adopted, implemented, or regularly relied upon, whether labeled final, interim, draft, informal, pilot, or otherwise.
- “Record” includes records maintained in any medium, including memoranda, directives, manuals, training materials, meeting records, email and attachments, official chat or Teams messages, dashboards, spreadsheets, saved reports and queries, database records, data dictionaries, code tables, system tickets, and electronically stored metadata.
- The requested cutoff is the date USCIS begins its search. If USCIS uses a different cutoff, please identify it in the determination and explain which categories it affects.

## Records requested

Produce the following Providence Field Office, Boston District Office (District 1), Northeast Region, or Field Operations Directorate records:

1. Existing monthly or weekly N-400 inventory, aging, queue, receipt-cohort, production, completion, and cycle-time reports, including records showing cases pending without an initial interview scheduled.
2. Scheduling calendars, capacity reports, or recurring records showing planned, available, opened, filled, unused, or canceled N-400 initial-interview slots, with applicant information redacted.
3. Records showing N-400 initial interview notices issued, initial appointments scheduled, initial examinations conducted, agency cancellations, applicant cancellations, and rescheduling, by week or month where maintained.
4. Approved staffing plans and recurring staffing reports showing the number of authorized, onboard, qualified, available, and assigned adjudicators who conduct N-400 interviews or adjudications.
5. Existing records of officer hours, production hours, time allocations, caseload allocations, or other effort measures assigned to N-400 work, if tracked.
6. Overtime requests, approvals, denials, restrictions, and funding decisions affecting N-400 interview or adjudication capacity.
7. Approved details, reassignments, workload shifts, cross-training, temporary duties, or deployment decisions involving personnel or resources ordinarily used for N-400 interviews, including shifts to other form types or operational priorities.
8. Final or operative instructions from headquarters, regional, district, or local management that set or change N-400 interview-ready criteria, queue order, scheduling priority, capacity, holds, pre-interview requirements, or resource allocation.
9. Local implementation instructions, meeting materials, training, job aids, scheduling procedures, or standard operating procedures concerning Item 8.
10. Existing variance, root-cause, corrective-action, or performance records explaining a material deviation from an N-400 production, cycle-time, inventory, backlog, or interview-capacity target.
11. Final meeting minutes, decision logs, approved briefing materials, or postdecisional records concerning N-400 delay, interview scheduling, capacity, staffing, or competing workloads.
12. Targeted email and official-message records returned by the minimum searches below that discuss, direct, approve, implement, report, or evaluate a pause, hold, slowdown, capacity change, queue change, staffing change, or resource shift affecting N-400 interview scheduling.

For records containing applicant information, redact direct identifiers and produce the operational, scheduling, capacity, staffing, and aggregate portions. The request does not seek names, A-numbers, receipt numbers, dates of birth, addresses, or officer identifiers.

## Search locations and search adequacy

Please search every location reasonably likely to contain responsive records, including the following, and any predecessor or successor repository:

- current and archived email, including former-employee, shared, functional, scheduling, workload, and leadership mailboxes;
- Microsoft Teams or comparable official chats, channels, meeting materials, and attachments;
- SharePoint, local and district intranet sites, shared drives, scheduling folders, workload folders, training folders, and document repositories;

- ELIS, CLAIMS 4/C4 Consolidated, eCISCOR, and any linked or successor reporting system containing Providence Field Office N-400 operational data;
- Power BI, Tableau, or comparable dashboards and saved reports;
- interview-calendar, appointment, room-capacity, scheduling, staffing, timekeeping, overtime, workload, performance, and ticket or change-management systems; and
- non-government accounts or devices used for official agency business, to the extent applicable and within USCIS control.

### Custodians

Please search the records of the following functional custodians, including acting, former, predecessor, and successor occupants during the requested period:

- Providence Field Office Director and Deputy Director;
- Providence Field Office adjudications chief, naturalization section chief, supervisory immigration services officers responsible for N-400s, and scheduling or workload coordinator;
- Providence Field Office personnel responsible for performance reporting, staffing, interview-room allocation, or overtime;
- the Boston District (District 1) director, deputy, naturalization or adjudications lead, workload or performance lead, and scheduling lead supervising the Providence Field Office; and
- the Northeast Region director and regional personnel responsible for N-400 workload, performance, staffing, scheduling, or resource allocation.

### Minimum communication searches

For email, official messaging, and collaboration platforms, the following are minimum searches and are not an exclusive substitute for locating policies, reports, or records by folder, title, system, or other organized means:

- (N-400 OR N400 OR naturalization) AND ("interview schedul*" OR "schedule* interview" OR "interview slot*" OR "interview capacit*" OR "interview ready" OR "appointment notice")
- (N-400 OR N400 OR naturalization) AND (priorit* OR depriorit* OR pause* OR hold* OR freeze* OR defer* OR suspend* OR slowdown OR delay* OR backlog OR queue* OR FIFO OR "cycle time")
- (N-400 OR N400 OR naturalization) AND (staff* OR workload OR allocat* OR reassign* OR detail* OR overtime OR "officer hour*" OR capacity OR "production goal*")
- (N-400 OR N400 OR naturalization) AND ("pre-interview" OR vetting OR screening OR "additional review" OR "secondary review" OR FDNS OR CARRP)

In any final or partial determination, please identify the components and offices searched; repositories and systems searched; custodians or functional positions searched; date ranges, terms, and cutoff used; whether archived, former-employee, shared, and functional accounts were searched; any deduplication applied; and any repository or category excluded and why.

## Processing, production, and consultation

**Records—not interrogatories.** This request seeks identifiable agency records, not answers to questions, legal conclusions, research, or a newly authored explanatory narrative. Descriptions of metrics or database fields identify the records sought. For structured data, Requester seeks copies of the electronic fields and records as maintained, using ordinary query or export functionality; Requester does not require USCIS to merge disparate databases or perform substantive analysis.

Under 6 C.F.R. § 5.4(i)(2)(ii), creating a program that produces specified fields or records from a well-defined database ordinarily is "business as usual," with programmer or operator time treated as search time. If a requested compilation would constitute a new listing or index, please produce the corresponding underlying nonexempt fields as maintained, together with any existing reports or query outputs. Separate exports from separate systems are acceptable. See Nat'l Sec. Couns. v. CIA, 898 F. Supp. 2d 233, 269–73 (D.D.C. 2012); Heartland All. for Hum. Needs & Hum. Rts. v. DHS, 291 F. Supp. 3d 69, 81–82 (D.D.C. 2018).

**Preferred form; no format-related delay.** For usability, Requester prefers data and spreadsheets in native CSV or XLSX form; documents and presentations in searchable PDF or native electronic form; and emails with attachments kept in their parent-child relationship, where those forms are readily reproducible. These are preferences, not conditions of the request. If a responsive record is more readily reproducible, or can be searched, reviewed, or produced sooner, in another reasonably usable electronic form, document type, or delivery method, please produce it promptly in that form without awaiting further agreement. No question about

preferred form, document type, or delivery method should delay the statutory determination, search, review, adjudication of this request, or an interim production. This flexibility does not authorize the omission of responsive fields or substantive content. Please contact Requester only if the available choice would materially affect completeness or cost.

**Interim and rolling production.** Please make interim or rolling productions as processing proceeds whenever feasible; no particular cadence is required. Requester prefers that readily segregable final or currently operative policies, existing reports or exports, and capacity and staffing records be processed before more burdensome communications searches. A difficult category, document type, or format issue should not postpone the determination or production of a separate, readily available category.

**Consult before narrowing.** If USCIS believes any portion is insufficiently described or unusually burdensome, please identify the particular item, repository, estimated hit count, estimated hours and cost, and the feature causing the concern, then contact Carl Hurvich at Carl@BrooksLawFirm.com to discuss targeted clarification or a practical narrowing. Please confirm any agreed modification in writing; unless Requester agrees to a modification, USCIS should adjudicate the request as submitted. A scope discussion should not suspend work on unaffected items.

## Segregability, exemptions, and descriptions of withheld records

Produce every reasonably segregable, nonexempt portion of responsive records. Redact individual fields or use generalized categories or small-cell suppression where necessary rather than withholding an entire dataset or record. Mark the location and asserted exemption for each deletion. For records withheld in full or part, provide record-specific or appropriately category-specific descriptions sufficiently detailed to permit an informed administrative appeal, including, to the extent necessary and not itself exempt, the date or date range, record type, originating and receiving offices, subject, approximate volume, exemption, and the reasonably foreseeable harm from disclosure required by 5 U.S.C. § 552(a)(8).

For any Exemption 5 assertion, identify the decision and deliberative process involved and state whether the record, conclusion, or reasoning was adopted, incorporated, implemented, or used as operative guidance. Segregate completed data, factual material, effective dates, scope, implementation facts, postdecisional material, and staff instructions affecting the public.

FOIA's affirmative-disclosure and anti-secret-law provisions protect access to final opinions, adopted policy statements, and staff instructions affecting the public. 5 U.S.C. § 552(a)(2); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–54 (1975). USCIS should distinguish operative scheduling or adjudicative standards and final or adopted instructions from genuinely predecisional deliberations and identify whether any purportedly deliberative material was adopted, incorporated, or implemented. Requester does not seek detailed fraud indicators, security-check vulnerabilities, database-access methods, or interview tactics. If USCIS withholds such material under Exemption 7(E), it should produce segregable scheduling consequences, adjudicative standards, aggregate data, and operative instructions.

A categorical refusal to confirm or deny the existence of records is inappropriate for general N-400 policies, workload records, and aggregate statistics. If USCIS invokes such a response for a narrow security-related subcategory, please process every other category and provide the maximum nonexempt explanation permitted.

## Public records, referrals, and preservation

**Publicly available records.** If USCIS relies on 5 U.S.C. § 552(a)(2) or contends a responsive record is public, identify the exact stable URL, record title, date, version, and responsive item. A generic webpage citation is not a substitute for the requested nonpublic data, historical version, or underlying record.

**Consultations and referrals.** USCIS should search and process responsive records in its possession even if another component originated them. If USCIS consults with or refers records to another component, please identify the component, referral date, affected record or item, and status, and continue processing all USCIS-originated and segregable material.

**Preservation.** Pursuant to 6 C.F.R. § 5.9, please preserve all responsive records and copies while this request, any administrative appeal, and any judicial review remain pending, including records otherwise subject to automatic deletion, routine overwrite, or expiring retention schedules.

## Requester classification; fee waiver or reduction; alternative authorization

Requester seeks a waiver or reduction of all fees under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). The requested records directly concern identifiable federal operations: USCIS's receipt, queuing, examination scheduling, staffing, resource allocation, and adjudication of N-400 applications. The connection is direct and clear, not remote or attenuated.

Disclosure will be meaningfully informative and will significantly increase public understanding. USCIS's public reports provide aggregate receipts, approvals, denials, pending inventory, and average overall processing time, but they do not reveal receipt-cohort waits for an initial examination, interview-notice and appointment events, interview-ready or hold queues, scheduling rules, field-office interview capacity, staffing allocation, or whether a post-2024 policy or resource decision changed N-400 priority. The requested records therefore are not duplicative. They can show whether the reported delay is national or localized; whether it reflects a queue, hold, priority, capacity constraint, or resource shift; when any change began; and how many applicants it affects—questions current aggregate data cannot answer.

Using the Providence Field Office records, Requester will publish an office-specific analysis of inventory, interview capacity, staffing, overtime, competing workloads, and local implementation, comparing those findings with national data and the other requested New England offices. The resulting analysis will significantly enhance public understanding of an ongoing federal function with consequences for family-reunification options, citizenship-restricted employment and career advancement, passport and travel planning, and rights and responsibilities reserved to citizens, including voting, jury service, and eligibility for certain public offices.

Carl Hurvich regularly represents naturalization applicants and has the subject-matter expertise to interpret USCIS terminology, scheduling systems, policies, and data. Brooks Law Firm maintains a public website and immigration blog and has prepared a press release about this initiative. It will publish responsive records or stable links, a plain-language report, and useful tables and comparisons without charge or a paywall. It will distribute the findings to practitioners, affected communities, community organizations, reporters, researchers, and the public. Access will not depend on retaining the firm, and Requester will not sell the records. This concrete plan will reach a broad audience and permit independent analysis of USCIS's operations.

Requester acknowledges that the firm is evaluating potential litigation concerning systemic N-400 delay and that responsive records may inform that evaluation. That possible use is not the request's primary commercial purpose and does not predominate over the public interest. This systemic request is not submitted for a named paying client, seeks no A-File or client-specific record, is not tied to a monetary claim or contingent recovery, and will yield information made freely available to persons with no relationship to the firm. Any litigation-related, reputational, or client-development benefit is incidental; the substantial public interest in understanding USCIS's current naturalization operations is greater than any such interest. See 6 C.F.R. § 5.11(k)(3).

Requester also asks to be classified as a representative of the news media for this request under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 6 C.F.R. § 5.11(b)(6). Brooks Law Firm regularly gathers current immigration information, applies editorial and legal judgment, and publishes distinct works through its freely accessible website and blog. This request supports a defined report, 'N-400 Interview Delays: What USCIS Records Show,' with explanatory articles, tables, and substantive media updates. Requester will publish an initial analysis after a substantial production and update it as material records arrive. The records are not sought for resale, subscriber access, or direct economic return. These activities satisfy the regulatory functions of gathering current information, using editorial skill to create distinct works, and distributing them to an audience; therefore no search or review fees should be assessed. See 6 C.F.R. § 5.11(d)(1).

USCIS should grant a full public-interest waiver. If it concludes that only some responsive categories qualify, Requester seeks the partial waiver required by 6 C.F.R. § 5.11(k)(4), with an item-specific written explanation. If USCIS declines news-media classification, then, independently, because the intended use is public oversight and free dissemination rather than a use that furthers a commercial, trade, or profit interest, Requester asks to be classified as a noncommercial-use 'other requester' under 6 C.F.R. § 5.11(b), not as a commercial-use requester. The statutory and regulatory fee restrictions—including the first two hours of search and first 100 pages (or equivalent) without charge, no review fees, and the restrictions that apply if USCIS misses FOIA's time limits—remain applicable. See 6 C.F.R. § 5.11(d)(2), (4).

If USCIS denies a full waiver after applying the foregoing standards, Requester agrees to pay only properly assessable fees up to $250. Before incurring fees above that amount or any charge for new programming or a special service, please provide an itemized written estimate by request item and confer with Requester. This limited authorization is solely to prevent delay and does not concede requester classification, fee assessability, or waiver entitlement.

## Request for expedited processing

Requester seeks expedited processing under 6 C.F.R. § 5.5(e)(1)(iii) because further delay threatens the loss of substantial due-process rights. Brooks Law Firm represents multiple naturalization applicants whose N-400 applications were filed beginning in January 2025 and who, as of this request, have not been scheduled for an initial examination. Historically, the firm generally observed interviews approximately six months after filing. For applications filed in January 2025, the wait is now approximately nineteen months. This sustained pattern is unlike any N-400 interview-scheduling delay the firm has observed in its practice.

The examination is not merely an administrative milestone. Congress and the governing regulations require an examination and determination process. See 8 U.S.C. §§ 1446(b), 1447(a); 8 C.F.R. §§ 335.2, 335.3. Congress also gave district courts express authority to act when USCIS fails to decide an application within 120 days after the examination. 8 U.S.C. § 1447(b). Until USCIS conducts the examination, that 120-day period does not begin, postponing applicants' practical access to the specific judicial remedy Congress provided. The requested records are needed to identify any common agency action and permit affected persons to seek meaningful relief while it can still protect their rights; ordinary FOIA delay could render that access materially less effective.

Prolonged uncertainty about when USCIS will schedule and decide an N-400 prevents applicants and their families from planning important aspects of their future. Naturalization timing can postpone family-sponsorship options available only to citizens and thereby delay family reunification; foreclose or defer federal and other citizenship-restricted employment and career opportunities; delay access to a U.S. passport and associated travel planning; and postpone participation in citizen-only civic rights and responsibilities, including voting, jury service, and eligibility for certain public offices. Later adjudication cannot restore a missed election, a lost job opportunity, or months of family separation.

The Providence Field Office records are needed now to distinguish any national policy from local capacity, staffing, competing workload, or implementation conditions. The November 3, 2026 federal election is now approximately ten weeks away. The time needed for an interview, decision, oath ceremony, and voter registration makes the window for eligible applicants to naturalize and participate rapidly closing. USCIS should decide this expedition request and notify Requester within ten calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4), and, if granted, process the request as soon as practicable. A denial should state the reasons and appeal rights and should not delay ordinary processing.

> **Certification.** I, Carl Hurvich, certify that the factual statements supporting expedited processing in this letter are true and correct to the best of my knowledge and belief.

## Determination, production schedule, and communications

Please make the determination required by 5 U.S.C. § 552(a)(6)(A)(i) and 6 C.F.R. § 5.6(c) within 20 working days and promptly make granted records available thereafter. If USCIS invokes unusual circumstances, provide timely written notice identifying the circumstance and expected determination date and, if the extension exceeds ten working days, offer the statutory opportunity to agree to narrowing or an alternative schedule. State the disposition of each requested item or category, the anticipated production schedule, and appeal rights. Requester prefers correspondence and production through FIRST, with notices copied, if feasible, to Carl@BrooksLawFirm.com, but any reasonably accessible electronic method is acceptable. Format, document type, or delivery method should not delay determination, adjudication, or production.

Respectfully submitted, ***/s/* Carl Hurvich**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**BROOKS LAW FIRM,**
Plaintiff,

Civil Action No. __________

v.

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**
Defendant.

---

# EXHIBIT B

USCIS FIRST Status Printout - October 13, 2026
Control No. COW2026005942

← Back

# Control Number: COW2026005942

FOIA/PA STATUS CHECK

DOCUMENT LIBRARY

## Request Details

| | |
|---|---|
| Request Description | |
| Date Submitted | **08/25/2026** |
| Request Type | **FOIA Request** |

## Request Status

| | |
|---|---|
| Place in Queue | **382 of 678 pending requests** |
| Status | **Submitted** |
| Estimated Completion Date | **10/02/2026** |

**Note: This is an estimated date based on average processing times. Availability of records and complexity of request may effect completion date.**

**For more information about making a FOIA/PA request or submitting an Administrative Appeal, please see the link How to Request Records through the Freedom of Information Act or Privacy Act (uscis.gov) .**

✔ Received

The request was received by USCIS.

2 In Process

USCIS is performing activities such as reviewing the request, searching for records, and preparing records for release.

3 Completed

USCIS completed processing the request, and a letter was sent to the requester explaining the actions taken

# USCIS FOIA/PA Headquarters Office

USCIS Contact Center

1-800-375-5283 or TTY 800-767-1833

FOIAPAQuestions@uscis.dhs.gov